ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-165[1]

| | | |
|---|---|---|
| AUTORIDAD DE LOS PUERTOS DE PUERTO RICO<br><br>Patrono-Peticionario<br><br>v.<br><br>HERMANDAD DE EMPLEADOS DE OFICINA COMERCIO Y RAMAS ANEXAS DE PUERTO RICO<br><br>Unión-Recurrida<br><br>NEGOCIADO DE CONCILIACIÓN Y ARBITRAJE<br><br>Organismo Administrativo | KLCE202300724 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.<br><br>SJ2021CV02320<br><br>Sala: 503<br><br>Sobre: Impugnación de Laudo |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Pérez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece ante nos, la Autoridad de los Puertos de Puerto Rico, (en adelante, parte peticionaria o Autoridad de Puertos) quien presenta el presente recurso de *certiorari* mediante el cual solicita la revisión de una *Sentencia* emitida el 18 de abril de 2023 y notificada el 20 de abril del mismo año, por el Tribunal de Primera Instancia, Sala Superior de San Juan, (en adelante, TPI). En dicho dictamen el TPI confirmó una *Revisión de un Laudo de Arbitraje.*

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración,

---

[1] Mediante la Orden Administrativa OATA-2023-165 se designa al Juez Joel A. Cruz Hiraldo en sustitución de la Jueza Eileen J. Barresi Ramos.

expedimos el auto de *certiorari* y *confirmamos* el dictamen recurrido mediante los fundamentos que expondremos a continuación.

**-I-**

La Autoridad de Puertos y la Hermandad de Empleados de Oficina de Comercio y Ramas Anexas de Puerto Rico, (en adelante, HEO), pactaron un Convenio Colectivo con vigencia desde el 1 de octubre de 2000 hasta el 30 de septiembre de 2007. Al momento de los hechos del pleito de epígrafe, el Convenio Colectivo había sido extendido y se encontraba vigente. La Sección II,[2] intitulada *Declaración de Principios* provee a las partes negociar colectivamente las principales condiciones que puedan afectar a los empleados, entiéndase, salarios, condiciones económicas, entre otras cosas.

Por otro lado, en el Artículo II de la antedicha sección, se desprende que:

> La Unión reconoce y acepta que la administración de la Autoridad y dirección de la fuerza obrera son prerrogativa exclusiva de la Autoridad. Por lo tanto, salvo como expresamente se limita por los términos de este Convenio, la Autoridad retendrá el control de todos los asuntos concernientes a la operación, manejo y administración de la empresa. Dichos poderes y prerrogativas no serán utilizadas por la Autoridad arbitraria o caprichosamente contra empleado alguno, ni con el propósito de discriminar contra la Unión o sus miembros, ni para actuación que constituya una violación a lo provisto por este Convenio.[3]

En cuanto a la Reclasificación contenida en el Artículo XII, el Convenio Colectivo dispone:

> Sección 1: **Cuando los deberes y responsabilidades de un puesto cambien sustancial y permanentemente, el incumbente del puesto o la Autoridad podrá solicitar la reclasificación del mismo.** La petición de reclasificación se hará por escrito a la Oficina de Recursos Humanos, quien deberá resolver en un término no mayor de sesenta (60) días naturales, a partir de la fecha en que se reciba en la Oficina de Recursos Humanos dicha solicitud. (Énfasis suplido).
>
> Sección 2: **Una vez la Oficina de Recursos Humanos tome la determinación correspondiente, le**

---

[2] Apéndice XVI (A) del Recurso de *Certiorari*, pág. 170.
[3] *Íd.*, pág. 171.

**notificará al empleado afectado a la Unión, conjuntamente con el estudio efectuado que la sustente.** En caso de que el empleado afectado no esté de acuerdo con la decisión tomada por la Oficina de Recursos Humanos, o en caso de que hubiesen transcurrido los sesenta (60) días sin que hubiese sido tomada la decisión por la Oficina de Recursos Humanos, éste podrá, dentro de los diez (10) días subsiguientes apelar ante un Comité de Clasificaciones compuesto por un representante técnico designado de la Autoridad y un representante técnico designado de la Unión. (Énfasis suplido).

Sección 3: De haber acuerdo de ambos representantes, su determinación al respecto será final e inapelable.

Sección 4: Si el Comité de Clasificaciones no llega a un acuerdo, en un término de 60 días, el empleado y la Unión podrán apelar dentro de los quince (15) días laborables siguientes de finalizado este término directamente al Negociado de Conciliación y Arbitraje conforme la segunda etapa del Artículo XLII Ajuste de Controversias.

Sección 5: Toda reclasificación será efectiva a la fecha en que el empleado radicó la reclamación y se le concederá el aumento de la siguiente forma:

a) La diferencia en básico entre escala o dos pasos en la escala asignada al puesto, lo que sea mayor.
b) En caso de que el puesto sea reclasificado a un nivel inferior, no se le reducirá el sueldo del empleado.

Sección 6: **Si como resultado de cambios en los requisitos, deberes o funciones de una plaza, el personal de la Unidad Apropiada que ocupa la plaza afectada no cumple con los nuevos requisitos, deberes o funciones establecidos, a ese personal afectado se podrá reubicar en otra plaza para la que cualifique y esté disponible al momento de establecer los nuevos requisitos, deberes o funciones de conformidad con las disposiciones de este Convenio**. (Énfasis suplido).

De igual forma, sobre la Reasignación de un puesto, el Convenio Colectivo provee el proceso en su Artículo XIII.[4] Veamos:

Sección 1: El empleado podrá solicitar la reasignación del puesto que ocupa cuando considere que se dan las circunstancias que ameriten tal reasignación, según estas se definen en la siguiente sección.

Sección 2: La escala salarial de un puesto podrá ser revisada de demostrarse que han surgido cambios

---

[4] *Íd.*, pág. 187.

sustanciales y permanentes en los factores que afectan la complejidad y responsabilidad del mismo.

Sección 3: La Oficina de Recursos Humanos realizará el estudio correspondiente y notificará al incumbente y su supervisor los resultados del estudio, dentro de los sesenta (60) días de haberse recibido la petición y los documentos necesarios en apoyo de la misma.

Sección 4: De proceder la reasignación del puesto, el ajuste del mismo en la escala salarial se hará conforme a las disposiciones del Artículo XII (Reclasificación) de este Convenio.

Sección 5: En caso de que el empleado no esté de acuerdo con la decisión de la Oficina de Recursos Humanos o transcurrido los sesenta (60) días sin tomar decisión, éste podrá dentro de los diez (10) días subsiguientes, apelar ante el Comité de Clasificaciones. El Comité de Clasificación tendrá sesenta (60) días para tomar su decisión y de no hacerlo en este término, el empleado y la Unión podrán apelar dentro de los quince (15) días laborables siguientes, directamente al Negociado de Conciliación y Arbitraje.[5]

En adición a lo anterior, ambas partes pactaron que, ante algún asunto resuelto insatisfactoriamente, las controversias se resolverían a través del procedimiento acordado. El Artículo XIII del Convenio Colectivo, Sección 2, dispone en lo relativo que, (1) la primera etapa corresponde a una Fase administrativa; (2) **La segunda etapa se produciría en arbitraje cuando la querella no haya sido resuelta satisfactoriamente por las partes en su etapa anterior.**[6] Además dicho Artículo establece que: "**La decisión del árbitro será final e inapelable siempre y cuando sea conforme a derecho**".[7] (Énfasis suplido).

A tenor con dicho marco contractual, mediante una carta fechada del 10 de julio de 2009 y firmada y, posteriormente aprobada el 4 de septiembre de 2009, el Director Ejecutivo de la Autoridad de Puertos, el señor Álvaro Pilar Vilagrán, en conjunto con la señora Rita M. Torres Carrasquillo, DEA [sic] en Administración y la señora Gladys G. Meléndez Díaz, Directora de

---

[5] *Íd.*, pág. 188.
[6] Apéndice XVI (B) del Recurso de *Certiorari,* pág. 127.
[7] *Íd.*, pág. 128.

Recursos Humanos y Relaciones Laborales en representación de la Autoridad de Puertos, notificaron la revisión de clase de puesto de Vigía Marino.[8]

En esencia, la revisión y modificación de clase de Vigía Marino reflejó varios cambios, incluyendo: (1) requerir destrezas en la operación de aplicaciones de computadora tales como: "Word" y navegación de internet; (2) requerir pleno dominio de los idiomas inglés y español; y (3) requerir tomar un curso básico de navegación, de aproximadamente 24 horas, con el fin de proveerles a estos herramientas adicionales sobre el control de tráfico de las embarcaciones.[9]

Así las cosas, el 18 de mayo de 2010, el señor Rosvaldo Velázquez La Santa (en adelante, señor Velázquez La Santa o solicitante), peticionó a Recursos Humanos y Relaciones Laborales de la Autoridad de Puertos, (en adelante, Recursos Humanos), por conducto de la Directora, la señora Meléndez Díaz, la reasignación en escala de clasificación del puesto que ocupaba como Vigía Marino. Arguyó que, habían variado los factores que afectaban la complejidad y responsabilidad del puesto. [10]

El 13 de junio de 2020, la Autoridad de Puertos recibió el *Cuestionario de Clasificación* del puesto de Vigía Marino completado por el señor Velázquez La Santa, el señor Federico Bauzó, supervisor de Tráfico Portuario; y por el señor Domingo Marrero, Gerente Auxiliar de Operaciones Marítimas.[11] Posteriormente, el 23 de septiembre de 2010, la Gerente de Recursos Humanos remitió a la Directora de Recursos Humanos, la señora Meléndez Díaz, un informe con los hallazgos de la revisión del puesto de Vigía Marino. El 30 de septiembre de 2010 la señora Meléndez Díaz le notificó al

---

[8] Apéndice XVI (A) del Recurso de *Certiorari*, págs. 130-134.
[9] *Íd.*
[10] Apéndice XVI (B) del Recurso de *Certiorari*, pág. 135.
[11] Apéndice XVI (A) del Recurso de *Certiorari*, págs. 142-148.

señor Velázquez La Santa, la denegatoria de la reasignación de la clase de Vigía Marino a una escala superior, toda vez que, conforme al estudio y análisis de clasificación efectuado, el Departamento de Recursos Humanos concluyó que, no habían surgido cambios sustanciales ni permanentes en las labores y deberes del puesto, por lo que no procedía dicha reasignación de escala y sueldo. Esta misiva fue recibida por el señor Velázquez La Santa el 25 de octubre de 2010.[12]

El 4 de febrero de 2011, la HEO acudió al Negociado de Conciliación y Arbitraje solicitando revisión de la determinación emitida y notificada por la señora Meléndez Díaz. Mientras, el 5 de octubre de 2012, la perito de la HEO, la señora Gladys Rivera Medina, emitió un informe pericial.[13] Luego de la presentación de los respectivos alegatos de las partes y tras varios incidentes procesales que no es necesario pormenorizar, el 27 de mayo de 2015, el asunto quedó sometido para la consideración del Negociado de Conciliación y Arbitraje.

El 17 de marzo de 2021, la Honorable Árbitro Alcántara Mañaná emitió el laudo que nos ocupa. La Árbitro señaló que, de acuerdo con un análisis de la prueba documental presentada, los criterios esbozados por la Autoridad de Puertos para la clasificación y reasignación de puestos, las expresiones de los supervisores y gerenciales de los vigías marinos, las disposiciones del Convenio Colectivo, en adición al informe pericial vertido por la perito de la HEO, procedía el reclamo del señor Velázquez La Santa. A estos fines, ordenó el cambio de grupo ocupacional y retributivo correspondiente para atender el reclamo del solicitante.[14]

---

[12] Apéndice XVI (B) del Recurso de *Certiorari*, pág. 272.
[13] Apéndice XVI (A) del Recurso de *Certiorari*, págs. 149-163.
[14] *Íd.*, págs. 106-114.

En desacuerdo con el dictamen emitido, el 15 de abril de 2021 la Autoridad de Puertos acudió ante el Tribunal de Primera Instancia para la *Revisión de Laudo*. Le imputó a la Árbitro haber incidido en: (1) no brindar la deferencia gerencial a la Autoridad de Puertos y (2) al determinar que procedía la reasignación del grupo ocupacional cuando no se cumplían los requisitos dispuestos por el Convenio Colectivo que lo justificara.[15] Con el beneficio de la comparecencia de ambas partes, el Foro de Instancia sostuvo el laudo arbitral. Mediante *Sentencia* emitida y notificada el 18 de abril de 2023, el foro primario declaró *No Ha Lugar* el recurso de revisión del laudo presentado por la Autoridad de Puertos. Añadió que, el Convenio Colectivo restringía las actuaciones de la Autoridad de Puertos, en cuanto no se realizara un estudio correspondiente. Sustentó, además, que existían cambios sustanciales y permanentes que validaban la solicitud de reasignación de puesto. Finalmente, el Foro a *quo* señaló que, basado en su apreciación de la prueba y a tenor con el Convenio Colectivo vigente, el laudo fue emitido conforme a derecho por lo que no se justificaba su intervención.[16]

Inconforme con el dictamen, la parte peticionaria presentó el recurso que nos ocupa y le imputó al foro primario la comisión de los siguientes errores:

> Erró el TPI como cuestión de derecho al denegar la revisión del Laudo Núm. A-11-2013, pues declinó aplicar el Artículo II sobre "Derechos de la Gerencia" del Convenio Colectivo vigente, bajo el criterio que en un asunto que trate sobre reasignación de puesto no procede ejercerse una deferencia gerencial. Ello, a pesar de que la declaración de principios del referido convenio colectivo y la jurisprudencia interpretativa obligan a que los compromisos y obligaciones ratificadas en un pacto entre las partes tienen carácter vinculante y es ley entre las partes.
>
> Erró el TPI como cuestión de derecho al confirmar un laudo que concedió un remedio sobre reasignación de grupo ocupacional y ajuste salarial del puesto de vigía marino, aun cuando no figuraban los requisitos

---

[15] Apéndice XVI del Recurso de *Certiorari*, págs. 70-104.
[16] Apéndice V del Recurso de *Certiorari*, págs. 19-29.

desglosados en el Artículo XIII del Convenio Colectivo en torno a cambio sustancial y permanente en factores que afectan la complejidad y responsabilidad del puesto.

Con el beneficio de la comparecencia de ambas partes, procedemos a examinar el derecho aplicable.

## -II-

### -A-

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *Rivera et al. v. Arcos Dorados et al,* 212 DPR 194 (2023); *McNeil Healthcare v. Mun. Las Piedras I,* 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012). En lo pertinente al presente caso, la Regla 32(D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.32(D), establece que el recurso de *certiorari* es el vehículo procesal adecuado para revisar las resoluciones, órdenes o sentencias finales de un laudo de arbitraje del TPI. La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1., establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 709 (2019). En lo pertinente, la Regla 52.1, *supra,* dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la

justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

La discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 847 (2023); *Mun. Caguas v. JRO Construction,* 201 DPR 703, 712 (2019); *IG Builders et al. v. BBVAPR, supra,* pág. 338. Así pues, la discreción judicial para expedir o no el auto de *certiorari* no ocurre en un vacío ni en ausencia de parámetros. *Id.* pág. 338. Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari. Torres González v. Zaragoza Meléndez, supra*; *Rivera et al. v. Arcos Dorados et al. supra*; *Mun. Caguas v. JRO Construction, supra,* pág. 709; *McNeil Healthcare v. Mun. Las Piedras I, supra,* págs. 404-405; *IG Builders et al. v. BBVAPR, supra,* págs. 338-339. La referida regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz De León*, 176 DPR 913, 918 (2009). Es por ello que, los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado. *Id.* pág. 918. Nuestro ordenamiento jurídico ha establecido que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al., supra*; *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular,* 152 DPR 140, 155 (2000).

### -B-

El Tribunal Supremo ha definido el *Laudo de Arbitraje* como la decisión final de un árbitro al disponer de una controversia. Es decir, "la decisión o fallo que dictan los árbitros". *VDE Corporation v. F&R Contractors*, 180 DPR 21,45 (2010). Nuestro más alto Foro también ha señalado que "[u]n laudo arbitral tiene una naturaleza similar a una sentencia o decreto judicial". *UIL de Ponce v. Dest. Serrallés, Inc.,* 116 DPR 348, 354 (1985).

Por otra parte, en Puerto Rico existe una política pública vehemente a favor del arbitraje obrero-patronal. *UGT v. HIMA*, 212 DPR 492, 500 (2023); *UGT v. Centro Médico del Turabo*, 208 DPR 944, 955 (2022); *AAA v. UIA*, 200 DPR 903, 922 (2018); *CFSE v. Unión de Médicos*, 170 DPR 443, 449 (2007); *Martínez Rodríguez v. AEE*, 133 DPR 986, 995 (1993). Esto, como un método alterno ideal, flexible y menos oneroso que el litigio judicial para dirimir las disputas que emanan de la relación laboral. *UGT v. Centro Médico del Turabo, supra,* pág. 500; *Indulac v. Unión*, 207 DPR 279, 294 (2021). A tenor con lo anterior, las determinaciones de los árbitros en los procedimientos de arbitraje y de los laudos emitidos, están revestidas de gran deferencia. *UGT v. Centro Médico del Turabo, supra,* pág. 955.

Por tal razón, un convenio de arbitraje "impone un carácter excluyente al proceso judicial, ya que una cláusula de arbitraje es un contrato que impide a los jueces y tribunales conocer en primera instancia de los conflictos o cuestiones litigiosas sometidas a arbitraje". *Indulac v. Unión, supra,* págs. 293-294. De esta forma, la revisión de un laudo arbitral "se circunscribe a la determinación de la existencia de fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelve todos los asuntos en controversia". *Aut. Puertos v. HEO*, 186 DPR 417, 427 (2012); *CFSE v. Unión de Médicos, supra,* pág. 449.

No obstante, esta norma de autolimitación encuentra una excepción cuando las partes pactaron que el laudo arbitral se emita conforme a derecho. Pues, el foro judicial debe realizar una revisión judicial más incisiva, teniendo la facultad de revisar los méritos del laudo arbitral y corregir los errores jurídicos, a tenor con las doctrinas legales y prevalecientes. *Indulac v. Unión, supra,* pág. 295; *Depto. Educ. v. Díaz Maldonado,* 183 DPR 315, 326 (2011);

*Constructora Estelar v. Aut. Edif. Púb.*, 183 DPR 1, 33 (2011). Por lo que "[u]n laudo conforme a derecho confiere a las partes la certidumbre de que el resultado arbitral estará estrictamente aferrado a los límites de la ley, y que no se concederá un remedio más allá del provisto por nuestro andamiaje jurídico". *COPR v. SPU*, 181 DPR 299, 347 (2011). De lo contrario, cuando el convenio arbitral no dispone que los asuntos se resuelvan conforme a derecho, el árbitro o la árbitra puede determinar cuál es la ley aplicable y eludir el derecho sustantivo. *CFSE v. Unión de Médicos, supra,* pág. 449-450.

A estos fines, nuestro más alto Foro ha sentenciado que:

> **Como norma general, y cuando las partes no han acordado que el laudo sea conforme a derecho, finalizado el trámite de arbitraje, las determinaciones realizadas por el árbitro son finales e inapelables y no pueden litigarse ante los tribunales. Tampoco se puede indagar sobre el proceso deliberativo, mental y decisional del árbitro. Mucho menos resultan revisables alegados errores en la apreciación de la prueba o en la aplicación del derecho.** *Constructora Estelar v. Aut. Edif. Púb., supra*, págs. 32-33. (Énfasis nuestro).

Sin embargo, cualquier impugnación de un laudo arbitral, sea por las causas tradicionales o por no estar resuelto conforme a derecho, debe realizarse a tenor con las reglas aplicables a la revisión de las decisiones administrativas. *UIL de Ponce v. Dest. Serrallés, Inc., supra*, págs. 355-356.

Una de las instancias en las que se faculta a un tribunal a realizar una revisión judicial incisiva es cuando en el procedimiento de arbitraje se eludió el debido proceso de ley, es decir, un procedimiento justo en el que se le garantice a las partes las debidas garantías ofrecidas por la ley. *Indulac v. Unión, supra*, pág. 296. Empero, "el debido proceso de ley que se exige en un procedimiento de arbitraje es el mínimo necesario que acredite una resolución justa de la controversia". *Íd.*, pág. 297. A saber, "se cumple con el debido proceso de ley en el ámbito del arbitraje obrero-patronal si se le

notifica e informa al agraviado de los cargos en su contra, se celebra una vista y se le da oportunidad al agraviado de someter evidencia". *Íd.*, págs. 297-298.

**-C-**

Por otro lado, concerniente a la revisión judicial de los procesos de arbitraje, nuestro máximo foro judicial ha expresado que, aunque la intervención no esté vedada, ante un convenio de arbitraje lo más prudente es la abstención judicial. *UCPR v. Triangle Engineering Corp.,* 136 DPR 133, 142 (1994). Cónsono con este pronunciamiento, "los procedimientos de arbitraje y los laudos emitidos en el campo laboral gozan ante los tribunales de justicia de una especial deferencia", para que un tribunal pueda entender sobre la revisión de un laudo tienen que ocurrir circunstancias especiales. *UGT v. Centro Médico del Turabo, supra,* pág. 955.

La revisión de un laudo de arbitraje en un tribunal puede ser impugnado por cualquiera de las partes si ocurre: **(a) fraude, (b) conducta impropia, (c) falta de debido procedimiento de ley, (d) violación de la política pública, (e) falta de jurisdicción, (f) que el laudo no resuelve todas las cuestiones en controversia que se sometieron, y (g) para revisar su corrección y validez jurídica.** *JRT v. Hato Rey Psychiatric Hosp.,* 119 DPR 62, 68 (1987). (Énfasis suplido). Esto implica que, "un laudo no puede anularse por meros errores de criterio ya sean éstos en cuanto a la ley o en cuanto a los hechos". *COPR v. SPU, supra,* pág. 329.

En vista de ello, que el laudo se deba emitir conforme a derecho significa que, los foros judiciales apelativos tendrán la autoridad para revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro para poder determinar si son correctas. *COPR v. SPU, supra,* pág. 370. Finalmente, el Tribunal Supremo de Puerto Rico ha reiterado que:

"los laudos tienen presunción de corrección, similar al que se atribuye a las determinaciones de las agencias administrativas o a las sentencias, por lo cual la autoridad para revisarlos no constituye una licencia para favorecer la nulidad del laudo. **En estas circunstancias, el laudo solo se puede anular si no se ha resuelto la controversia conforme a derecho**". *Íd.* pág. 370. (Énfasis suplido).

### -D-

"El convenio colectivo es un contrato que, como tal, tiene fuerza de ley entre las partes suscribientes siempre que no contravenga las leyes, la moral y el orden público". *COPR v. SPU*, *supra*, pág. 320; *JRT v. Junta Adm. Muelle Mun. de Ponce*, 122 DPR 318, 333 (1988). Un convenio colectivo es un contrato y, como tal, tiene fuerza de ley entre las partes y debe cumplirse con estricta rigurosidad. *CFSE v. Unión de Médicos*, *supra,* pág. 451. Así las cosas, **"el convenio colectivo obliga al patrono, a la unión y a los miembros individuales de la unión".** *San Juan Mercantile Corp. v. JRT,* 104 DPR 86, 89 (1975) (Énfasis suplido). Como resultado, "**ni el patrono ni los obreros pueden pretender beneficiarse de ciertas cláusulas ... y rechazar otras**". *Íd.* (Énfasis suplido).

Nuestro máximo foro judicial ha señalado que "cuando en el convenio colectivo que rige las relaciones obrero-patronal las partes acuerdan utilizar el mecanismo del arbitraje como método alterno, se crea un foro sustituto a los tribunales de justicia, lo que, en efecto, [...] representa una sustitución del juez por el árbitro". *UGT v. Centro Médico del Turabo*, *supra*, pág. 955. *HIETEL v. PRTC*, 182 DPR 451, 456 (2011).

### -III-

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 32 (d) del Tribunal de Apelaciones, *supra.* De ordinario, bajo nuestra facultad revisora, "el tribunal al que se recurre mediante *certiorari* tiene discreción para atender el asunto

planteado, ya sea expidiendo el auto o denegándolo". *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 594 (2011), la respuesta es en la afirmativa.

En el recurso de marras, como primer error, la Autoridad de Puertos nos señala que incidió el Tribunal de Primera Instancia al denegar la revisión del laudo pues declinó aplicar el Artículo II sobre "Derechos de la Gerencia" del Convenio Colectivo vigente, bajo el criterio que en un asunto que trata sobre reasignación de puesto no procede ejercerse una deferencia gerencial. Ello, a pesar de que la declaración de principios del referido convenio colectivo y la jurisprudencia interpretativa obligan a que los compromisos y obligaciones ratificadas en un pacto entre las partes tienen carácter vinculante y es ley entre las partes. *No le asiste la razón.*

El Artículo II del Convenio Colectivo de la Autoridad de Puertos deriva los Derechos de la Gerencia. El génesis de esta controversia estriba enteramente en una oración de este. Veamos

> La Unión reconoce y acepta que la administración de la Autoridad y dirección de la fuerza obrera son prerrogativa exclusiva de la Autoridad. **Por lo tanto, salvo como expresamente se limita por los términos de este Convenio, la Autoridad retendrá el control de todos los asuntos concernientes a la operación, manejo y administración de la empresa.** [...].[17](Énfasis suplido).

Como puede observarse, del Convenio Colectivo la HEO reconoce los derechos de la agencia. No obstante, este derecho de la Autoridad de Puertos no es absoluto, es decir, el propio Convenio Colectivo lo restringe. Ante una reclamación de clasificación de puestos, la Autoridad de Puertos tiene la obligación de seguir las disposiciones precitadas y "que dichos poderes y prerrogativas no sean utilizadas por la Autoridad de Puertos de manera arbitraria o caprichosamente contra empleado alguno, ni con el propósito de

---

[17] Apéndice XVI (A) del Recurso de *Certiorari*, pág. 171.

discriminar contra la Unión o sus miembros, ni para actuación que constituya una violación a lo provisto por este Convenio".[18]

Como vemos, ante una solicitud de reasignación de puesto, la Autoridad de Puertos estaba impedido de denegar la misma, amparándose en que mantenía deferencia gerencial ante las decisiones tomadas. Adviértase que, el propio Artículo II le reconoce el control exclusivo de todos los asuntos concernientes a la operación, manejo y administración de la agencia, siempre y cuando cumpla con sus obligaciones.

Asimismo, la Autoridad de Puertos señala que, la declaración de principios del referido convenio colectivo y la jurisprudencia interpretativa obligan a que los compromisos y obligaciones ratificadas en un pacto entre las partes tienen carácter vinculante y es ley entre las partes. Ciertamente, tal como ha sido respaldado por nuestra jurisprudencia la Autoridad de Puertos estaba obligada al cumplimiento con las disposiciones contenidas en los Artículos II, XII y XII del Convenio Colectivo. Reiteramos que, "**ni el patrono ni los obreros pueden pretender beneficiarse de ciertas cláusulas … y rechazar otras**". *San Juan Mercantile Corp. v. JRT, supra*, pág. 89. (Énfasis suplido). Concluimos que no se cometió el error, toda vez que luego de una lectura integral de los Artículos II, XII y XII la facultad de la Autoridad de Puertos se encontraba limitada por los términos del Convenio Colectivo, por lo que no podía entenderse como una carta en blanco para el manejo de los asuntos relacionados a la operación, manejo y administración de la agencia. *No se cometió el error señalado.*

Como segundo señalamiento de error, la Autoridad de Puertos añadió que erró el Foro a *quo* como cuestión de derecho al confirmar un laudo que concedió un remedio sobre reasignación de grupo

---

[18] Apéndice XVI (A) del Recurso de *Certiorari*, pág. 171.

ocupacional y ajuste salarial del puesto de vigía marino, aun cuando no figuraban los requisitos desglosados en el Artículo XIII del Convenio Colectivo en torno a cambio sustancial y permanente en factores que afectan la complejidad y responsabilidad del puesto. *No le asiste la razón.*

La Autoridad de Puertos expone que esencialmente, no procede la reasignación del grupo ocupacional y ajuste salarial, toda vez que, los vigías marinos efectuaban las mismas funciones desde antes que se realizara la revisión del puesto. Nótese que, de una lectura de la carta fechada por el director ejecutivo sobre la revisión de clase de puesto de vigía marino, no se modificó la descripción de puesto de los vigías marinos. De la precitada misiva emitida por el señor Pilar Vilagrán, se reconoce que "esta clase de puesto ha evolucionado como resultado de la utilización de equipos de radio comunicación y programación computarizada".[19] La revisión realizada por la Autoridad de Puertos impuso sobre los vigías marinos los siguientes requisitos adicionales para poder ejercer con sus labores: curso básico de manejo de computadoras, pleno dominio de la comunicación oral y escrita, en los idiomas inglés y español, curso básico de navegación correspondiente a veinticuatro (24) horas, sin llevar a cabo el procedimiento dispuesto en los Artículos XII y XIII, *supra.*[20]

De una lectura serena del Artículo XIII, sobre la Reasignación de Puesto, vemos como el mismo no impone sobre el empleado el cumplimiento de requisitos, más allá de poder solicitar la reasignación del puesto. Las eventuales secciones imponen sobre el patrono la responsabilidad de revisar la escala salarial, así como los cambios sustanciales y permanentes. Añade que, la Autoridad de Puertos deberá realizar un estudio correspondiente y notificar

---

[19] *Íd.*, págs. 130-132.
[20] *Íd.*, pág. 148.

dentro del término provisto en el Convenio Colectivo. Finalmente, de proceder la reasignación del puesto deberá realizarse según lo pactado. Por último, la Sección 5 del Artículo XIII le impone al patrono la obligación de realizar las notificaciones en unos términos específicos para que este pueda recurrir en caso de no estar de acuerdo.[21]

Como vemos, este estudio no es un acto optativo de la Autoridad de Puertos. El Convenio Colectivo le impone la obligación de efectuar dichas gestiones y notificarle al empleado de manera adecuada. De un examen del expediente de autos, incluyendo el informe pericial realizado por la HEO, podemos observar que, de una comparación entre las especificaciones anteriores y posteriores de la clase, sí se produjo un cambio sustancial y permanente en factores que afectan la complejidad y responsabilidad del puesto, al igual que las puntuaciones obtenidas.

La Autoridad de Puertos se limitó a presentar mediante una comunicación interna de Recursos Humanos, un informe que incluyó las descripciones de trabajo, dificultades señaladas por los supervisores entrevistados y recomendaciones. A su vez, añadió una tabla comparativa de las puntuaciones y concluyó que, la modificación no justificaba la escala del puesto de vigía marino, toda vez que las especificaciones estaban atemperados a los deberes y responsabilidades actuales del puesto.[22] Mediante un examen del expediente, y en contraste con el informe de la perito de la HEO, la Autoridad de Puertos debió haber llevado a cabo tal análisis y no simplemente concluir que no impactaban en las funciones de su clase porque las ejecutaban previamente.

El Tribunal de Primera Instancia concluyó que el *Laudo de Arbitraje* fue fundamentado en la totalidad del expediente,

---

[21] *Íd.*, págs. 187-188.
[22] Apéndice XVI (A) del Recurso de *Certiorari*, págs. 142-148.

incluyendo el Cuestionario de Clasificación, Retribución, Reclutamiento y Selección de la Autoridad de Puertos, el informe pericial de la HEO, la tabla de extensión en puntos de los grupos ocupacionales y la escala de evaluación de puestos unionados y las disposiciones del Convenio Colectivo.[23] El foro primario sostuvo que, a base de dicho examen, el *Laudo de Arbitraje* fue emitido conforme a derecho.

En vista de ello, y luego de realizar una revisión del caso de marras, coincidimos con tal dictamen. Como podemos destacar del derecho antes expuesto, para impugnar un laudo debe ser alegado: "fraude, conducta impropia, falta de debido procedimiento de ley, violación de la política pública, falta de jurisdicción, que el laudo no resuelve todas las cuestiones en controversia que se sometieron, y para revisar su corrección y validez jurídica". *JRT v. Hato Rey Psychiatric Hosp.*, *supra*, pág. 68.

De igual forma destacamos que, según la doctrina normativa del arbitraje "**los laudos tienen presunción de corrección**, [...] por lo cual la autoridad para revisarlos no constituye una licencia para favorecer la nulidad del laudo. **En estas circunstancias, el laudo solo se puede anular si no se ha resuelto la controversia conforme a derecho**". *COPR v. SPU, supra,* pág. 370. (Énfasis suplido). Es por ello que, en ausencia de los criterios que nos permiten intervenir con el laudo de arbitraje, el mismo debe ser confirmado. Por lo que es forzoso concluir que, la imposición de dichos requisitos adicionales sí configuraron un cambio sustancial y permanente, toda vez que son requisitos inherentes que afectan la complejidad y responsabilidad del puesto. *No se cometió el error señalado.*

---

[23] Apéndice V del Recurso de *Certiorari*, pág. 28.

### -IV-

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, expedimos el auto de *certiorari* y *confirmamos* la *Sentencia* emitida por el Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones